UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MITCHELL LEE BLEVINS,                              Case No. 1:15-cv-717

       Plaintiff,                                         Black, J.
                                                                    Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Mitchell Bevins filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for disability insurance benefits on June 2, 2012, alleging disability since June 1, 2012. (Tr. 91, 101, 157-58).[1] After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On May 8, 2014, ALJ Kristen King held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony

---

[1] Plaintiff also applied for Supplemental Security Income on October 10, 2012 (Tr. 159-64). Plaintiff's application was denied on October 17, 2012, because he had "too much income to be eligible for SSI" (Doc 16; Supplemental Certified Administrative Record). As a result, the case before the Court only concerns Plaintiff's application for disability insurance benefits.

1

from Plaintiff and impartial vocational expert Robert Breslin. (Tr. 27-82). On July 3, 2014, the ALJ issued denied Plaintiff's applications in a written decision. (Tr. 8-26).

Plaintiff was born in 1972 and was 40 years old at the time of his alleged onset date of disability. He has a high school education and previously worked as a sheriff's deputy and a carpenter. (Tr. 20). He alleges disability primarily due to back pain, arthritis, and chronic pain. Plaintiff's date last insured under the Social Security Act is September 30, 2012.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease status/post back surgery, degenerative joint disease with early spondylosis, moderate bilateral neuroforaminal stenosis, left shoulder tendinitis, osteoarthritis, left ulnar nerve entrapment, carpal tunnel syndrome, and Raynaud's." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work as follows:

> He can lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently; stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour work day, with normal breaks; push or pull occasionally with the left upper extremity; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, knee or crouch; never crawl; never reach overhead with the left upper extremity, and no more than frequent overhead reaching with the right upper extremity; frequent handing of objects, defined as gross manipulation; frequent fingering, defined as fine manipulation; avoid all use of dangerous machinery; avoid all exposure to unprotected heights; limited to simple, routine tasks; limited to jobs in which changes in the work setting occur no more than approximately 15% of the work day.

2

(Tr 14.). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff is unable to perform his past relevant work, significant other jobs exist in the national economy that Plaintiff could performed including assembler, production inspector and hand packer. (Tr. 21). Accordingly, the ALJ determined that Plaintiff is not under disability as defined in the Social Security Regulations, and is not entitled to DIB and or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to give controlling weight to Plaintiff's treating physicians; 2) failing to elicit testimony from medical expert; 3) improperly evaluating Plaintiff's credibility; and 4) failing provide a hypothetical question to the vocational expert that accurately portrayed impairments. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

3

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work;

4

and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

*1. Evaluation of opinion evidence*

Plaintiff's first assignment of error asserts that the ALJ failed to properly weigh the opinion evidence.  Specifically, Plaintiff asserts that the ALJ erred in evaluating the findings of his treating physician, Dr. Terrence Welsh.  In this regard, Plaintiff argues that the ALJ erred in her evaluation of Dr. Welsh's opinion for several reasons: (1) the ALJ did not properly consider the regulatory factors found in 20 C.F.R. § 404.1527; (2) the ALJ improperly gave more weight to the state agency reviewing physicians' opinions despite the fact that they did not have access to the entire record; (3) the ALJ's RFC did not exactly match a medical opinion; (4) the ALJ did not properly consider some of Plaintiff's severe impairments; and (5) the ALJ improperly evaluated Plaintiff's activities of daily living. Plaintiff's contentions are not well-taken.

5

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected."* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416 .927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the

6

record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) (3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004).

In formulating Plaintiff's RFC, the ALJ gave Dr. Welsh's findings "little" weight.  In so concluding, the ALJ found that Dr. Welsh's restrictive opinion lacked support from the overall medical evidence of record. (Tr. 19).  The ALJ also gave some weight to the findings of the state agency physicians who reviewed the record in October 2012 and February 2013 and determined that Plaintiff was not disabled and was capable of a range of light work. (Tr. 87-88, 97-98). However, after the administrative hearing, the ALJ determined that additional limitations were supported relating to gross and fine manipulation and overhead reaching.  (Tr. 19). As such, the ALJ's RFC finding included greater restrictions than those found by the state agency physicians.  Upon careful review, the undersigned finds that the ALJ's findings in this regard are substantially supported.

At the outset the undersigned notes that the relevant time period to establish disability runs from Plaintiff's alleged onset date of <u>June 1, 2012 and his date last insured of September 30, 2012.</u> (Tr. 13, 157) (emphasis added).

During that time, Plaintiff saw Terrence Welsh, M.D., his treating physician, approximately five times. On June 14, 2012, Plaintiff told Dr. Welsh that his shoulder was doing better and that he only had pain at a one or two out of ten (Tr. 215). While he complained that his back pain was worsening in both June and July 2012, he received an epidural injection on July 20, 2012 and reported "substantial" improvement, noting that his back pain was only a two or three out of ten by July 27, 2012. (Tr. 238, 285-86,

7

304). On September 6, 2012, Plaintiff told Dr. Welsh that his back pain was only at a three out of ten and Dr. Welsh's exam revealed tenderness in Plaintiff's lower lumbar spine, but no atrophy, a negative straight leg test, a normal gait, normal muscle tone and strength, and intact reflexes and sensation. (Tr. 305-07).

Thereafter, in March 2013, Dr. Welsh opined that Plaintiff could only sit for two hours total, stand for one hour, and work for a total of only two hours per day. (Tr. 351). He also opined that Plaintiff would miss more than two days of work per month due to his symptoms. (Tr. 353). He further limited Plaintiff to only occasional tolerance of heat and cold and occasional exposure to dust, smoke, and fumes. (Tr. 351- 52).

With respect to Dr. Welsh's exertional limitations, the ALJ reasonably concluded that his opinion regarding Plaintiff's ability to sit and stand, as well as his opinion that Plaintiff would have excessive absenteeism, was not supported by, and was inconsistent with, the medical evidence in the record. (Tr. 19). 20 C.F.R. § 404.1527(c)(3)-(4) (medical opinions evaluated for supportability and consistency). The ALJ acknowledged that Dr. Welsh had been treating Plaintiff for many years and was a treating source. (Tr. 15, 19). See 20 C.F.R. § 404.1527(c)(2). Despite this, the medical evidence in the record did not support Dr. Welsh's extreme opinion. See 20 C.F.R. § 404.1527(c)(3)-(4). Imaging studies from both before and after Plaintiff's date last insured only show minor issues.

Notably, an MRI of Plaintiff's spine in January 2013 showed a slight progression in the central disc protrusion at L5-S1, but no other changes compared to the June 2012 MRI. (Tr. 338-39). A cervical spine MRI in February 2014 showed only a small C5-C6 disc herniation and Dr. Welsh declined to increase Plaintiff's pain medication based on

8

that result. (Tr. 19, 360, 386). Further, while Plaintiff continued to have both shoulder and back pain, high levels of pain did not persist. While Plaintiff complained of extreme pain at certain visits with medical providers, his pain was generally at low levels due to effective treatment, including injections. (*See* Tr. 215, 304, 306-07, 378-82, 395-96, 398-403, 409-12, 414-18, 424-27, 462, 464, 466-69, 470-71, 488-89). Plaintiff also reported that his back and neck pain had only a slight effect on his activity level and stated in late 2013 that his level of activity was only slightly impaired and that he was currently employed. (Tr. 19, 389, 409, 414).

Furthermore, with respect to Dr. Walsh's non-externtional limitations, the ALJ properly declined to include such restrictions in her RFC finding as Plaintiff himself denied wheezing, coughing, or heat and cold intolerance. (Tr. 19, 416).

Additionally, Plaintiff argues that the ALJ improperly considered her daily activities in discounting Dr. Welsh's opinion. While courts have questioned whether some daily activities really indicate that a Plaintiff is able to work outside of the house, an ALJ is allowed and indeed obligated by the regulations to consider whether a Plaintiff's daily activities are inconsistent with his stated functional abilities. See 20 C.F.R. § 404.1529(c) (recognizing that in assessing a claimant's allegations of pain and limitation, the ALJ must make a credibility finding based on both the objective medical evidence and other evidence in the entire case record). Here, the ALJ properly considered Plaintiff's daily activities in addition to several other factors, in assessing his RFC.

Accordingly, the ALJ properly discounted Dr. Welsh's opinion because it was inconsistent with the evidence in the record, including Plaintiff's own testimony relating

9

to his daily activities. See 20 C.F.R. § 404.1527(d) (4) (*"Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). See *Payne v. Comm'r of Soc. Sec.,* 402 Fed.Appx. 109, 112–13 (6th Cir. 2010) (ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes).

In sum, the ALJ's decision indicates that she thoroughly considered the medical evidence and treatment history and properly found that they did not support a finding of disability.

*2. Medical Expert*

Plaintiff next argues that the ALJ erred in failing to comply with SSR 96–6p because she did not retain and call a medical expert. Plaintiff's assertion is unavailing.

Ruling 96–6p outlines the ALJ's discretion in determining whether an updated medical opinion is actually necessary. *See, also, Arno v. Astrue,* 2010 WL 5566835 (S.D.Ohio Oct.8, 2010) (Abel, MJ) ("an [ALJ's] determination of whether a medical expert is necessary is inherently a discretionary decision) (internal cite omitted). Thus, the primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases. See *Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Regulations provide that an ALJ may "ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. §§ 404 .1527(f)(2)(iii) and 416.927(f)(2)(iii). An ALJ's decision whether a medical expert is necessary, however, is

10

inherently discretionary. See HALLEX I–2–5–32–34 (Sept. 28, 2005); See also *Hayes v. Astrue,* 2011 WL 901013 (S.D.Ohio Feb.14, 2011) (Bowman, MJ) ("rarely is an ALJ required to obtain additional medical evidence"). Thus, there is no mandate requiring an ALJ to solicit such evidence. See *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 189 (6th Cir.2009) ("20 C.F.R. §§ 404.1527(f)(2) (iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony ..."). Ultimately, the ALJ is charged with the duty of evaluating the medical evidence on record and determining the claimant's RFC. See 20 C.F.R. § 404.154(c).

There is no showing in this case that the use of a medical consultant was necessary. Plaintiff claims that the ALJ should have gotten expert opinions to interpret Dr. Welsh's opinion from March 2013, long after the date last insured, and also evaluate his subjective report that Plaintiff "could not handle stressful situations very well." (Doc. 11 at 13). However, as detailed above, the ALJ properly evaluated Dr. Welsh's findings.

Moreover, there was no evidence in the record of mental health treatment and no opinion regarding any mental health limitations. As noted by the Commissioner, the only evidence in the record regarding Plaintiff's mental status are a few notations in 2013 and 2014 stating that Plaintiff felt irritable, but describing his symptomology as "mild in severity." (Tr. 423). Plaintiff's own testimony at the hearing further indicates that he was not diagnosed with depression until 2013, after his alleged onset date, and did not start taking medication until that point. (Tr. 55). In any event, the ALJ gave Plaintiff the benefit of the doubt and, based on his testimony at the hearing, limited him to simple tasks in a work setting of fewer changes, as well as restrictions on work near hazards. (Tr. 19).

11

Accordingly, on this record, it was within the ALJ's discretion, to call or not to call a medical expert. Thus, the ALJ's reasonable exercise of that discretion should not be overturned. For these reasons, the undersigned finds no merit in this assignment of error.

*3. Credibility*

Plaintiff next argues that the ALJ erred in evaluating his credibility. Specifically, Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony at the hearing as well as his reported activities of daily living. Plaintiff further asserts that the ALJ did not consider the side effects of his medications. Plaintiff's assertions lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and

12

>persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a

credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Upon close inspection, the undersigned finds that the ALJ properly considered the requisite factors in making her credibility determination. Here, the ALJ determined that Plaintiff's complaints of disabling pain were only partially credible in light of the objective evidence, Plaintiff's inconsistent statements and his reported daily activities. The ALJ noted that the medical evidence clearly indicates that Plaintiff has developed lumbar disc disease and mild cervical spondylosis. (Tr. 19).

Here, the ALJ properly assessed Plaintiff's credibility in light of the above requirements. As noted by the Commissioner, in accordance with the regulations, the ALJ discussed the objective evidence and noted that despite Plaintiff's complaints of back pain, objective findings yielded mostly normal results, and Plaintiff did not comply with recommended levels of exercise. (Tr. 17, 18). The ALJ also noted that the objective evidence relating to Plaintiff's complaints of shoulder pain, hand pain and polyarthralgias of Raynaud's[2] showed conservative treatment and did not indicate limitations inconsistent with those outlined in the ALJ's RFC assessment. (Tr. 18).

---

[2] Plaintiff also argues that the ALJ did not properly consider his left shoulder tendonitis, left ulnar nerve entrapment, carpal tunnel syndrome, or Raynaud's. However, as noted by the Commissioner, many of these impairments did not exist until long after Plaintiff's date last insured. Nonetheless, the ALJ properly evaluated these impairments, noting that x-rays of Plaintiff's hands and left shoulder were negative and a left shoulder MRI showed minor rotator cuff tendinopathy with no significant tear. (Tr. 18, 464-65, 470-71). Plaintiff's EMGs from January 2013 showed only mild carpal tunnel syndrome. (Tr. 18, 335, 481). George Aitkin, M.D., an orthopedist, noted a subjective decrease in sensation in two left hand digits in March 2013, but there was no evidence of muscle wasting, and, at a later follow up visit, no loss of sensation was

Thus, the ALJ found Plaintiff's testimony less than fully credible because other evidence did not support complaints of the severity he alleged. (Tr. 17-18). *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 543 (6th Cir.2007) ("[T]he record is replete with medical evidence that Cruse's symptoms were not as severe as she suggested.").

Furthermore, the ALJ also properly considered that Plaintiff's treatment was effective and that he did not complain to his doctors about the side effects of any treatment. (Tr. 20). See 20 C.F.R. § 404.1529(c)(3)(iv)-(v)(considering the type, dosage, effectiveness, and side effects of any medication and other treatment a claimant has received for relief of symptoms).

Additionally, the ALJ's credibility assessment reasonably took into account Plaintiff's daily activities. See SSR 96-7p (an ALJ may consider statements about a claimant's daily activities while assessing credibility*); Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990) (as a matter of law, the ALJ may consider a claimant's household and social activities when assessing credibility). Here, the ALJ pointed to Plaintiff's testimony note that he was home alone most of the day. (Tr. 17, 20, 42-47). He was able to get dressed and prepare his meals, got his children up, drove them to school, and helped them with their homework. However, as noted by the Commissioner, the ALJ in no way improperly insinuated that Plaintiff's activities of daily living were equivalent to the demands of full-time work. Yet, the ALJ reasonably considered the fact that Plaintiff's activities were inconsistent with his allegations of total disability. *See Meyer v. Comm'r of Soc. Sec.*, No. 1:09-cv-814, 2011 WL 1124698 at *11 (S.D. Ohio Feb. 11, 2011) (Litkovitz, MJ) ("As a matter of law, the ALJ may consider [the

---

noted. (Tr. 18, 470, 475). Dr. Welsh also noted intact sensation on examination in January 2014. (Tr. 18, 369-70). Accordingly, the ALJ's RFC finding properly accounted for these limitations.

claimant's] household and social activities in evaluating her assertions of pain or limitations.") (citing *Blacha*, 927 F.3d at 231).

In light of the foregoing, the undersigned finds that the ALJ's credibility determination properly evaluated the factors outlined in 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p. His decision is substantially supported in this regard. Plaintiff's third assignment of error should therefore be overruled.

*4. Hypothetical Question*

Plaintiff also perfunctory asserts that the ALJ's hypothetical questions were insufficient because they failed to account for all of his limitations as found by Dr. Welsh. Plaintiff's contention lacks merit.

It is well established that an ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010).

In this case, to the extent Plaintiff argues that his functional limitations were greater than those found by the ALJ, the Court has already rejected that argument. As noted above, the ALJ properly determined that some of Dr. Welsh's limitations are not supported by the record and were therefore not adopted. The ALJ posed a complete hypothetical question to the VE–asking him to consider an individual with Plaintiff's age,

16

education, work experience, and RFC–and reasonably accepted the VE's testimony that the hypothetical individual described could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence to support the ALJ's finding that Plaintiff is not disabled. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994) (where hypothetical accurately described the plaintiff in all relevant respects, the VE's response to the hypothetical question constitutes substantial evidence). Accordingly, the ALJ's decision is substantially supported in this regard.

In sum, the record reflects that the ALJ properly evaluated the medical record, medical opinions, and Plaintiff's own statements regarding his abilities. Accordingly, the ALJ's decision supported by substantial evidence and Plaintiff's asserted errors should be overruled.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) the decision of the Commissioner to deny Plaintiff's benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) as no further matters remain pending for the Court's review, this case be **CLOSED**.

                                                   *s/Stephanie K. Bowman*
                                                   Stephanie K. Bowman
                                                   United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MITCHELL BEVINS,

       Plaintiff,

  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:15-cv-807

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

18